# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **LISA ANN HODO-PAYNE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-14-S-767-NE** |
| ) | |
| **JOSEPH MITCHELL BLAKE,** ) | |
| **JR. and PFS INVESTMENTS,** ) | |
| **INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lisa Ann Hodo-Payne, who is proceeding *pro se*, filed this case on April 24, 2014, asserting claims for wantonness, breach of fiduciary duty, consumer fraud, misrepresentation, and mail fraud against defendants Joseph Mitchell Blake, Jr., and PFS Investments, Inc.[1]  The case currently is before the court on separate motions to dismiss filed by both defendants,[2] and plaintiff's motion for leave to amend her complaint.[3]  Upon consideration of the motions, pleadings, and briefs, the court concludes that both defendants' motions to dismiss should be granted, and plaintiff's motion for leave to amend her complaint should be denied.

---

[1] Doc. no. 1 (Complaint).

[2] Doc. no. 9 (Motion to Dismiss by PFS Investments, Inc.); doc. no. 10 (Motion to Dismiss by Joseph Mitchell Blake).

[3] Doc. no. 12.

# I. STANDARDS OF REVIEW

## A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.
>
> To survive a motion to dismiss [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line

between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis added) (first and third alterations supplied, second and fourth alterations in original).

Additionally, the Eleventh Circuit has observed that "a statute of limitations

defense may be raised on a motion to dismiss for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6), when the complaint shows on its face that the limitations period has run." *AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir 1982).

"'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).

**B.     Motion for Leave to Amend**

Federal Rule of Civil Procedure 15, addressing amended and supplemental pleadings, states that a court should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2) (alteration supplied).

> A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) *where amendment would be futile*. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed.2d 222 (1962).

*Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (emphasis supplied).

## II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff's original complaint consists of one "General Complaint Form for *Pro*

*Se* Litigants,"[4] a separate document entitled "Complaint" that plaintiff drafted herself,[5] and several exhibits.[6] On the *pro se* complaint form, plaintiff states:

> The Defendant[7] committed wantonness, breach of fiduciary duty, consumer fraud[,] misrepresentation[,] and mail fraud by instructing the Plaintiff Lisa A. Hodo Payne to sign but not to date a life insurance application and self administer a HIV test as part of an insurance scam to place the insurance application with other insurance companies naming the Plaintiff as the insured and the Defendant as the beneficiary to get a large sum of money upon the plaintiff Lisa A. Hodo Payne[']s] death.[8]

As her request for relief, plaintiff states:

> The Plaintiff files this statement of claim against Joseph M. Blake Jr. [and] PFS Investment Inc. for wantoness [*sic*], consumer fraud, misrepresentation, breach of fiduciary duty and United States mail fraud. The Plaintiff prays for judgement against the Defendant[9] for $500,000 in damages for paranoia, mental anguish, emotional distress, and inability to compete in the workforce, loss of income and cost[s] incurred herein and any other appropriate relief as the court may

---

[4] Complaint, at ECF 1-4. "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically. *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009). Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header." *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D.D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)). Even so, the Bluebook recommends "against citation to ECF pagination in lieu of original pagination." *Wilson*, 772 F. Supp. 2d at 257 n.5. Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings. When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

[5] Complaint, at ECF 5-8.

[6] *Id.* at ECF 9-22.

[7] Plaintiff does not specify the defendant to which these allegations refer.

[8] Complaint, at ECF 2-3 (alterations supplied).

[9] Again, plaintiff does not specify the defendant to which these demands are directed.

determine to prohibit this type of malicious and fraudulent act committed by the Defendant to deter other agents/brokers from commiting [*sic*] these same types of acts.[10]

The pertinent allegations of the complaint drafted by plaintiff read as follows:

    4.  On June 23, 2010, The defendant Joseph M Blake Jr., came over to Ralph Payne Jr.[']s] house to take his current wife Ungkna Payne off of PRIMERICA policy number 0488506732 as beneficiary and added the plaintiff (Lisa A. Hodo) as beneficiary because Ralph Payne Jr. was going through a nasty divorce. . . .

    5.  In January 2011 the plaintiff Lisa A. Hodo received a life insurance annuity statement in the mail from Polish National Alliance of North America (PNA).  The Plaintiff does not have a life insurance policy with PNA.  In a letter dated August 9, 2012 from Catherine O'Neal[,] Ombudsman from the Department of Insurance State of Arizona[,] PNA is a "fraternal benefit society licensed in Arizona but have [*sic*] minimal business in the state only reporting 12,440.00 premium in 2010."  The department was not able to investigate this matter on my behalf becau[s]e I could not provide any information to them that the transaction occurred in Arizona.

    6.  On April 26, 2012, the plaintiff wrote to the Arizona Insurance Commissioner Office [*sic*] about being part of an insurance scam.  There were several correspondence [*sic*] between the plaintiff Lisa A Hodo-Payne, Arizona Insurance Commissioner[,] and PRIMERICA. . . .

    7.  The plaintiff[,] through her divorce attorney[,] subpoena[ed] the PRIME[R]ICA policy # 0488506732 that was signed by the plaintiff on June 23, 2010.  The policy was allowed to lapse (3) months later on September of 2010.  The defendant was the agent on the policy that dates back to 2008, and knowing that Ralph Payne was diagnosed with Hypertension, Dislipidemia, Hyperlipidemia, and Degenerative Joint Disease allowed the policy to lapse.  The defendant Joseph M Blake Jr used that life insurance policy as part of a ploy/scheme.

---

[10] Complaint, at 3 (alterations supplied).

8. The defendant was questioned by the Arizona Insurance Commissioner Office and PRIMERICA and in a letter dated August 9, 2012 sent to the plaintiff by Arizona Insurance Commissioner Office states "the reason the defendant asked the plaintiff to sign but not date the life insurance application because the defendant did not at that time know how long it would be before he could meet with Mr. Payne to get his signature and updated information for the reinstatement request[.]" [*sic*] The Arizona Commissioner Officer and PRIMERICA committed a duty of oversight during their investigation because the copy of the application that the defendant sent along with the first letter of complaint already had Mr. Payne['s] signature on it.[11]

### III. DISCUSSION

Defendants make several arguments in support of dismissing plaintiff's complaint.[12] The court will only address those arguments that are necessary for a resolution of defendants' motions.

### A.   Mail Fraud

Defendants assert that plaintiff's claims for mail fraud must be dismissed because there is no private right of action for mail fraud.[13] Plaintiff did not dispute

---

[11] Complaint, at ECF 6-8, ¶¶ 4-8 (alterations supplied).

[12] Defendant PFS Investments asserts: (1) it is not the proper the defendant; (2) the complaint fails to comply with the minimum pleading requirements of the Federal Rules of Civil Procedure; (3) all of plaintiff's claims are barred by the applicable statutes of limitations; (4) plaintiff failed to allege the "reckless indifference" or "wantonness" required to support a claim of wantonness under Alabama law; (5) plaintiff's claims for consumer fraud and misrepresentation were not pled with the specificity required by Federal Rule of Civil Procedure 9(b); (6) plaintiff's breach of fiduciary duty claim fails because PFS does not owe plaintiff a fiduciary duty; and (7) there is no private right action for "mail fraud." Doc. no. 9, at 2. Defendant Joseph Mitchell Blake adopts all but the first argument asserted by PFS. Doc. no. 10, at 1, 9. He additionally asserts that this court lacks personal jurisdiction over him. *Id.* at 2-9.

[13] Mail fraud is criminally prohibited by 18 U.S.C. § 1341, which provides:

that assertion in her response brief,[14] and the applicable law supports defendants' argument. *See Napper v. Anderson, Henley, Shields, Bradford and Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974)[15] (declining to view the statutes prohibiting mail fraud

---

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.  If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Relatedly, 18 U.S.C. § 1342 states:

> Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be fined under this title or imprisoned not more than five years, or both.

[14] *See* doc. no. 13 ("Affirmation of Plaintiff Lisa A. Hodo-Payne in Opposition to Defendant (Joseph Mitchell Blake Jr. Motion to Dismiss").

[15] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

and wire fraud as anything besides "purely penal"); *American General Life and Accident Insurance Co. v. Ward*, 509 F. Supp. 2d 1324, 1335 (N.D. Ga. 2007) ("The federal mail and wire fraud statutes do not, in and of themselves, create a private right of action."). Accordingly, plaintiff's civil claims for mail fraud are due to be dismissed.

**B.     Statutes of Limitations**

Defendants assert that plaintiff's other claims are barred by the applicable statute of limitations, which is two years for each remaining claim. *See Liberty National Life Insurance Co. v. Ingram,* 887 So.2d 222, 227 (Ala. 2004) ("Claims of fraudulent misrepresentation and suppression are subject to a two-year statute of limitations.") (citations and quotation marks omitted); *Tonsmeire v. AmSouth Bank,* 659 So.2d 601, 604 (Ala. 1995) ("The statute of limitations for breach of fiduciary duty is two years.") (citations omitted); *Henson v. Celtic Life Insurance Co.*, 621 So.2d 1268, 1274 (Ala. 1993) ("The statutory period of limitations for negligence and wantonness actions, found at Ala. Code 1975, § 6-2-38, is two years from the date the injury occurred.").

Thus, to be timely, all of plaintiff's claims would have to be based on actions that occurred on or after April 24, 2012. All of the actions of which she complains, however, occurred *before* that date. Plaintiff states that she was added as a

beneficiary to her (then-future) husband's life insurance policy on June 23, 2010.[16] That policy lapsed in September of 2010.[17] She received a life insurance annuity statement from Polish National Alliance of North America in January of 2011.[18] Plaintiff wrote a letter to the Arizona Insurance Commissioner's Office on April 26, 2012, complaining of actions taken by defendant Joseph M. Blake, an Arizona insurance agent.[19] In that letter, plaintiff explains that the fraud perpetrated on her consisted of her husband and Blake cancelling Policy No. 0488506732, on which plaintiff was the primary beneficiary, and taking out an insurance policy on plaintiff "naming themselves as the beneficiaries without [plaintiff's] knowledge or consent."[20] To support that theory, she states:

---

[16] Complaint, at ECF 6-7, ¶ 4. *See also id.* at Exhibit C (July 9, 2010 letter from Primerica Life Insurance Company, confirming that the effective date of the beneficiary change was June 23, 2010). Federal Rule of Civil Procedure 12(d) states that,

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d) (alteration supplied). Thus, courts usually "do not consider anything beyond the face of the complaint *and documents attached thereto* when analyzing a motion to dismiss." *Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997)) (emphasis supplied). Because the letter cited above was attached to plaintiff's complaint, the court can consider it without converting the motions to dismiss into motions for summary judmgent.

[17] Complaint, at ECF 8, ¶ 7. *See also id.* at Exhibit G.

[18] Complaint, at ECF 7, ¶ 5. *See also id.* at Exhibit D.

[19] Complaint, at Exhibit F.

[20] *Id.* at 2 (alteration supplied).

> In February of 2011, I received a phone call from Ralph stating that Joe Blake needs me to sign some additional paper work and take an HIV exam on his insurance policy #0488506732/88506732, for me to become beneficiary since we are married. He told me Mr. Blake will mail the paperwork to me with his instructions on how to complete it and he will enclose a self-address[ed] return envelope[.]
>
> I received the insurance forms and HIV test from Mr. Blake with his instructions for me to sign but not to date the forms and his instruction on the HIV test. Attached is a copy of the insurance agent Joe Blake [*sic*] letter of instructions mailed to me, copies of the forms I signed, copy of the seal from [the] HIV kit, and a copy of the priority mail that has Mr. Blake's return address. I noticed on the forms that the two digits (04) was not in front of the policy number on the forms that I signed but assumed since all of the other digits were the same, it was the same policy. I also noticed that page 5 was not included with the other forms for me to sign. In August of 2010 [*sic*: 2011],[21] I met my husband in Detroit, Michigan for his family reunion and addressed my concerns and inquired about the change of beneficiaries, and was told the policy was cancelled because of his epilepsy and anxiety medical conditions. *This is when everything started to make sense.*[22]

Plaintiff appears to assert that the applicable statutes of limitations should be tolled, because she filed suit within two years of discovering the actions that led to her claims.[23] In Alabama, the so-called "discovery rule" applies only to fraud claims.

---

[21] The court gives plaintiff the benefit of the doubt and assumes she intended to write 2011 instead of 2010, as the paperwork she allegedly discussed with her husband in August did not even exist until early 2011. Moreover, plaintiff refers to meeting her "husband" in Detroit, but she and Mr. Payne were not married until January of 2011. *See id.* at 1.

[22] *Id.* at 1-2 (alterations and emphasis supplied).

[23] *See* doc. no. 13, at 7 ("The Plaintiff[']s statute of limitations started on April 26, 2012, when the injury happened and the complaint was filed on April 25, 2014. However[,] Alabama Statute of Limitations in some cases is controlled by the occurrence rule, which begins to run when the injury or defect occurs, not when it is discovered. The discovery rule starts the clock when the plaintiff knows, or at least should have known, the injury happened.") (alterations supplied).

*Utilities Board of City of Opp v. Shuler Brothers, Inc.*, 138 So.3d 287, 293 (Ala. 2013) (citing *DGB, LLC v. Hinds*, 55 So. 3d 218, 223 (Ala. 2010)) ("The 'discovery rule' in Alabama applies only to fraud actions, *see* § 6-2-3, Ala. Code 1975, and cases involving the fraudulent concealment of the existence of a cause of action."); *see also Henson*, 621 So.2d at 1274 ("There is . . . no 'discovery rule' to toll the running of the limitations period with respect to negligence or wantonness actions."). Accordingly, there is no question that plaintiff's wantonness and breach of fiduciary claims are barred by the applicable statutes of limitations.

With regard to plaintiff's remaining claims for consumer fraud and misrepresentation, "the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3 (1975 & 2005 Repl. Vol.).

> [A] party will be deemed to have "discovered" a fraud as a matter of law upon the first of either the actual discovery of the fraud or when the party becomes privy to facts that would provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud.

*Dickinson v. Land Developers Construction Co., Inc.*, 882 So.2d 291, 298 (Ala. 2003) (citing *Auto-Owners Insurance Co. v. Abston*, 822 So.2d 1187, 1195 (Ala. 2001); *Gray v. Liberty National Life Insurance Co.*, 623 So.2d 1156, 1159 (Ala. 1993))

(alteration supplied).

Although it is not entirely clear from plaintiff's brief, she appears to assert that she discovered the alleged fraud on April 26, 2012, the date on which she submitted her complaint to the Arizona Insurance Commissioner's Office. That assertion simply cannot be logically supported by any of the allegations of plaintiff's complaint, or any of the materials she attached to her complaint. Plaintiff may not have sent her complaint letter to the Arizona Insurance Commissioner's Officer until April 26, 2012, but it is clear that she was aware of the facts supporting her complaint before that date.[24] As discussed above, all of the actions that support plaintiff's fraud claims occurred well before April of 2012, and plaintiff has offered no facts to indicate that she was prevented from discovering the effects of those actions until that time. In fact, plaintiff affirmatively indicates that she was aware of the alleged fraud before April of 2012. When plaintiff received the insurance forms from Mr. Blake sometime between February and August *of 2011*, she had questions about some discrepancies on the forms. By August *of 2011*, plaintiff was sufficiently suspicious to confront her husband about the change of beneficiary forms, and she acknowledges that "everything started to make sense" at that time.

---

[24] It is important to note that there is no requirement for plaintiff to submit her complaint to the state Insurance Commissioner, or to exhaust any other type of administrative remedies, before filing suit in federal court. Therefore, no plausible argument could be made that the statute of limitations was tolled while plaintiff pursued pre-suit administrative remedies.

A reasonable interpretation of the pleadings submitted *by plaintiff* indicates either that she actually discovered the fraud allegedly perpetrated against her before April of 2012, or that she was aware, by that date, of sufficient facts to prompt a reasonable person to investigate further. Accordingly, plaintiff's consumer fraud and misrepresentation claims also are due to be dismissed as untimely filed.

C.     **Motion for Leave to Amend**

Plaintiff requests leave to amend her complaint to change the name of defendant "PFS Investment, Inc." to "Primerica Life Insurance," and to state that defendant Joseph M. Blake was registered as a Securities Broker/Dealer /Agent with the Alabama Securities Commission from April 5, 2010 through sometime in 2012.[25] These changes are in response to defendants' arguments that plaintiff named the wrong corporate entity as a defendant, and that this court lacks personal jurisdiction over Mr. Blake.[26] Neither of those arguments was necessary to this court's decision on defendants' motions to dismiss. Moreover, plaintiff's proposed amended complaint contains no additional allegations that would affect the outcome of the dispositive issue, the statute of limitations. Accordingly, the amendment would be futile, and the motion to dismiss is due to be denied.

---

[25] Doc. no. 12, at 1-2.

[26] *See* doc. no. 9 (PFS Investments Inc.'s Motion to Dismiss and Memorandum of Law in Support); doc. no. 10 (Joseph Mitchell Blake, Jr.'s Motion to Dismiss and Memorandum of Law in Support).

## IV.  CONCLUSION AND ORDERS

In accordance with the foregoing, plaintiff's motion for leave to amend her complaint is DENIED.  Both defendants' motions to dismiss are GRANTED, and all claims embraced herein are DISMISSED with prejudice.  Costs are taxed to plaintiff. The Clerk is directed to close this file.

DONE this 15th day of July, 2014.

_____
United States District Judge